**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HARRIETT C. CALLIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:25-cv-01443** |
| | ) | |
| **TENNESSEE STATE UNIVERSITY,** | ) | **JUDGE CAMPBELL** |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Harriett Callier, a Nashville resident proceeding pro se, filed a Complaint for Employment Discrimination against her former employer, Tennessee State University (TSU). (Doc. No. 1.) Plaintiff also filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

**I. PAUPER STATUS**

Plaintiff's IFP application reports that she lives off Social Security benefits following her job loss, possesses no significant assets, and has monthly expenses that approximate her monthly income. The Court thus finds that Plaintiff cannot pay the $405 civil filing fee "without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). Accordingly, the IFP application (Doc. No. 2) is **GRANTED**. 28 U.S.C. § 1915(a).

**II. INITIAL REVIEW**

**A. Legal Standard**

Under the pauper statute, 28 U.S.C. § 1915(e)(2)(B), the Court must conduct an initial review and dismiss the Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such

relief. *See also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010)

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

**B. Facts**

Plaintiff worked at TSU from March 2016 until February 29, 2024, when she was 62 years old. (Doc. No. 1 at 3.) TSU was aware that Plaintiff had suffered from a disability since 2018, yet her job duties "expanded over time to include multiple full-time roles consolidated into a single position, without proportional compensation." (*Id.*) She "was paid approximately 50% less than younger coworkers performing substantially similar or fewer duties." (*Id.*) After Plaintiff "raised concerns regarding pay inequity, workload, and/or disability-related issues," she received a notice of "change in duty" on November 27, 2023, and was told to "return to the Financial Service Division/Human Resources Office for further instructions." (*Id.* at 4; Doc. No. 1-2.) Plaintiff's

2

satisfactory job performance had been documented by TSU. (Doc. No. 1 at 3.) TSU claimed that Plaintiff's termination was due to "financial necessity and layoffs," but Plaintiff claims this was not true. (*Id.* at 4–5.) TSU's report of financial distress was determined to be "falsely documented" and "misleading" in an audit conducted by the State of Tennessee in 2025. (*Id.* at 4.) After this audit, TSU "now publicly reports an improved and dramatically stronger financial condition." (*Id.* at 5.)

**C. Analysis**

In the five-count Complaint, Plaintiff asserts federal claims of discrimination and retaliation under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101 *et seq.*, 12112 (Counts 1, 2, and 5), and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, 623 (Counts 3 and 5). She also asserts claims of wage discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Claims 4 and 5), and of wage discrimination under the Equal Pay Act of 1963 (EPA), 29 U.S.C. § 206(d)(1) (Claim 4). Plaintiff seeks an award of back pay, front pay (or, alternatively, reinstatement to a comparable position), and damages. (Doc. No. 1 at 7–8.)

Plaintiff claims she was terminated "because of disability" (*id.* at 5, 7), "while substantially younger employees were retained and paid more." (*Id.* at 6.) However, TSU, as an arm of the State of Tennessee, is protected by Tennessee's sovereign immunity under the Eleventh Amendment, *see Boyd v. Tennessee State Univ.*, 848 F. Supp. 111, 113–14 (M.D. Tenn. 1994), and cannot be sued in federal court for workplace discrimination or retaliation under the ADA or the ADEA. *See Stanley v. W. Michigan Univ.*, 105 F.4th 856, 864–66 (6th Cir. 2024) (holding that, "[b]ecause WMU is an arm of the State of Michigan," and Congress's attempt to abrogate the states' Eleventh Amendment immunity in 42 U.S.C. § 12202 was not undertaken "pursuant to a valid grant of

3

constitutional authority," district court lacked subject-matter jurisdiction over ADA discrimination and retaliation claims); *Hawthorne-Burdine v. Oakland Univ.*, No. 16-1103, 2016 WL 11854487, at *2 (6th Cir. Nov. 3, 2016) ("As a state university, Oakland University is immune from suits for money damages under the ADA and ADEA.") (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001)).

TSU is subject to suit on the Complaint's remaining claims: for wage discrimination under the EPA and Title VII as claimed in Count 4, *see Wiler v. Kent State Univ.*, 637 F. Supp. 3d 480, 483 (N.D. Ohio 2022), and for retaliation under Title VII for opposing discriminatory wages, as claimed in Count 5. *See Strong v. Grambling State Univ.*, 159 F. Supp. 3d 697, 709 (W.D. La.), *aff'd*, 614 F. App'x 776 (5th Cir. 2015). However, to be actionable, the wage-related discrimination at the heart of such claims must be based on sex. According to its title, the Equal Pay Act is a "[p]rohibition of sex discrimination." 29 U.S.C. § 206(d). "A claim of disparate pay for equal work is essentially the same whether pursued under Title VII or the Equal Pay Act. The plaintiff must ordinarily show that the employer paid different wages to employees of opposite sexes for substantially equal work." *Conti v. Universal Enters., Inc.*, 50 F. App'x 690, 698 (6th Cir. 2002) (citing *Henry v. Lennox Industries, Inc.*, 768 F.2d 746, 752 (6th Cir. 1985)). *See also Wiler*, 637 F. Supp. 3d at 488 ("The Equal Pay Act prohibits employers from discriminating 'between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which [it] pays wages to employees of the opposite sex ... for equal work' on jobs that require 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'") (quoting 29 U.S.C. § 206(d)). In other words, Plaintiff must be claiming that she was paid less than her male counterparts, because she is female.

4

The Complaint's allegations in support of its claims of wage discrimination are that (1) "Plaintiff was paid approximately 50% less than *younger* coworkers performing substantially similar or fewer duties" (emphasis added); (2) "Plaintiff performed work requiring equal skill, effort, and responsibility"; (3) "Plaintiff was paid substantially less than comparators"; and (4) "Pay disparity was not based on seniority, applicable merit, or productivity." (Doc. No. 1 at 3, 6.) It is not reasonably inferable from these allegations or from the right-to-sue letter attached to the Complaint (Doc. No. 1-1)[1] that Plaintiff was paid substantially less than *male* comparators for equal work.

Nor is Plaintiff's alleged opposition to "inequitable pay" (Doc. No. 1 at 6) sufficient to constitute protected activity for purposes of her Title VII retaliation claim. Title VII's anti-retaliation provision "does not protect an employee … if h[er] opposition is merely a 'vague charge of discrimination.'" *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (quoting *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir.1989)). Rather, Plaintiff must establish that she challenged what she reasonably believed to have been an action that Title VII defines as an "unlawful employment practice," *id.*—that is, one that discriminated based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see id.* § 2000e-3 (prohibiting discrimination against an employee or applicant "because he has opposed any practice made an unlawful employment practice by this subchapter"). The Complaint does not allege, and the Court cannot reasonably infer, that Plaintiff challenged the pay at TSU because of inequity based on sex.

---

[1]   For purposes of initial review, the Court assumes that this lawsuit was timely filed within 90 days of Plaintiff's receipt of the EEOC's notice. The notice was issued and was available for download from the EEOC portal on August 27, 2025. (Doc. No. 1-1 at 2–3.) When Plaintiff did not download the notice, the EEOC mailed a hardcopy of the notice on September 9, 2025. (*Id.* at 1–2.) Plaintiff alleges that she received the notice on September 13, and the Complaint was filed 89 days later, on December 11, 2025.

In sum, the Complaint lacks sufficient factual allegations to enable the Court to review Plaintiff's EPA and Title VII claims. The Court will allow Plaintiff to amend her Complaint to provide the salient facts upon which these claims are based. Plaintiff's ADA and ADEA claims will be dismissed on immunity grounds.

### III. CONCLUSION

As explained above, Plaintiff must file an Amended Complaint if this action is to proceed. The Clerk **SHALL** send Plaintiff a form Complaint for Employment Discrimination (Pro Se Form 7) for her convenience, if she wishes to use it to file her Amended Complaint. If Plaintiff wishes to proceed with her EPA and Title VII claims for wage discrimination and retaliation, she **MUST** file her Amended Complaint within **30 DAYS** of the date this Order is entered on the docket, to clarify the factual basis for these claims. Plaintiff must also file, as an attachment to her Amended Complaint, a copy of the charge of discrimination she filed with the EEOC.

Failure to comply with these filing requirements, or to request an extension of the filing deadline before it expires, will result in the dismissal of this case.

Plaintiff's claims for discrimination and retaliation under the ADA and ADEA are **DISMISSED** for failure to state a claim upon which relief can be granted, in light of TSU's Eleventh Amendment immunity. 28 U.S.C. § 1915(e)(2)(B)(ii).

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE